Good morning, your honors. I'm Joseph Broyles for the appellant. Am I watching this clock here for my time? Yes. You're going to have, you reserved three minutes of your total 15 for rebuttal, correct? Yes. Mr. Broyles, correct? Yes, your honor. Okay, you may proceed. Good morning, may it please the court. I'm Joseph Broyles on behalf of the appellant. This case involves a tax refund. There's no underlying dispute about the existence of the refund. This taxpayer filed his tax, sorry, after he died, the tax return was filed more than three years late because he died. There was an overpayment on the tax return and a claim for refund was subsequently filed requesting that refund. Attached to the claim for refund was a statement by a doctor as required by a revenue procedure 99-21. The statement by the doctor stated that the decedent was financially disabled at the time of the claim for refund and there was also a statement signed by the executor of the estate of the decedent. Mr. Broyles, we're very familiar with the facts, so I have a question for you. One of the arguments you make on appeal involves whether there was error in the credibility findings made by the court below. Are you aware that our review of credibility findings, it's virtually unreviewable? I am, your honor, and I think the error was in evaluating the credibility of the witness, of the, in the first place. Your argument is more that we shouldn't look behind it all, so long as you provide an affidavit, the IRS should just accept it at face value and that's the end. Exactly, I mean, unless there's some indication of fraud or some other malfeasance, yes. I think that's the whole point of the revenue procedure. Indication of fraud in the face of the document itself, they can't look behind to find fraud? I think that's the purpose of the revenue procedure. What if the document suggests fraud or raises a question? I'm sorry, your honor? What if the document raises a question of misrepresentation or let's say fraud? Well, then yes. In that point, the IRS could go behind the document and seek evidence? Yes, and I think that's the sort of issue that it's not, that wouldn't be a medical issue. I IRS accountants, lawyers, judges are not. You agree that if a document, in this instance, the letter from the doctor, raises the suspicion of the IRS and they're entitled then at that point to go behind the document and seek evidence to judge its credibility? Yes, your honor, I would concede that point, but I think it's, I think it's the purpose of the rev proc to have that statement so that IRS auditors and accountants- I thought your argument was that the IRS can never go behind the document. You conceded something that I think hurts you. Well, you suggested that if there was fraud on the face of the document- If it raises a suspicion of fraud or misrepresentation. Well, but I don't think that it should allow the trier of fact, whether that's an IRS auditor or a judge, to analyze whether or not the statement itself is sufficient. And what I mean is, it shouldn't allow the trier of fact, whether that be an IRS auditor or judge, to go into the issues of the decedent's health. For example, there was a lot of testimony in this case about how sick was he? Was he able to drive? Was he able to live alone? And I think those are all the issues that the rev proc was designed to prevent us from getting into because we're not doctors. Again, I think it is the point of the revenue procedure that- Determinations on the documents that are being submitted, the tax documents and the supporting documents that are being submitted. It's not a medical issue. It's a credibility question, isn't it? No. I think the purpose of the rev proc is to avoid that sort of analysis. Again, because it's not going to be a doctor who's making that determination. It's going to be an accountant's lawyers are not medically trained. We're not in a position to make those determinations. That's the point of the rev proc. Do you understand that judges make determinations about credibility of medical professionals in thousands of cases every day in this country, including at the court of federal claims, where they have jurisdiction over vaccine act cases, which are much more highly complex than the facts at issue here. I do, your honor. But again, I think it is the purpose of the rev proc to avoid that. Keep talking about the IRS procedure. Is there anything in the statute of limitations that suggests the statute of limitations, the statutory language is told merely upon the submission of evidence, not proof of disability? No, your honor. There's a provision in the statute of limitations to determine what is disabled. The IRS created that rule in revenue procedure 99-21. Our position is that compliance with the rev proc should- Where in that procedure does it say it's told upon submission rather than proof of disability? Well, it is the purpose of the rev proc to- No, not the purpose. I think we can disagree about the purpose. Where is the specific language that says the statute of limitations for tax refund claims is told upon submission of evidence of disability rather than proof of disability? It's not expressed. It's not stated. Well, don't you lose then, because this is in the court of federal claims, where the statute of limitations are jurisdictional in a waiver of sovereign immunity. So it has to be expressed. The statute invites the IRS to write the rules. The IRS wrote the rule in the revenue procedure. And the revenue procedure has, I think, six elements that the taxpayer must comply with. And in this case, we did. And so I think that that should be the end of the analysis. Doesn't the statute, though, expressly refer to proof of the existence of the impairment as to submission of evidence of the impairment? I don't know that the statute uses the word prove. But the IRS wrote the rev proc in response to the invitation in the statute. The statute invites the IRS to write rules. And the IRS wrote the rules in the rev proc. And there are, again, six elements. And the taxpayer complied with all of them. And I think that that should be the end of the analysis. There are plenty of cases where one of the elements wasn't complied with, most often the doctor certification. And in those cases, the courts have held that failure to comply with the rev proc means that the claim for refund was untimely. I'm seeking a corollary rule that compliance with the rev proc establishes, affirmatively establishes disability. That's the one. I thought that that was your case. That all you had to do was submit the affidavit and it was case over. But you suggested, in answer to my questions, or rather you said that if the document raises suspicion of the IRS, that they can ask you for proof. Well, Your Honor, I think I was asked a hypothetical. What if there's fraud on the face of the affidavit? I guess, I mean, in the case if there's fraud, then the affidavit, you know. Well, how would you determine? I mean, how's the IRS going to determine if there's fraud or not unless they look at other facts? I mean, no doctor is going to submit an affidavit that said, I am untruthfully certifying that this person was disabled. Maybe that's why I'm struggling with the answer. I can't imagine a situation where, I can't imagine how there would be fraud on the face of an affidavit by a doctor. Basically, you're saying the evidence submitted by the taxpayer is unreviewable. That is the purpose of the ref rock. And you glean that purpose from your own speculation about what it meant because it's not in the plain language of the regulation. Do you think that IRS likely intended a policy that would not allow it to further examine whether somebody was actually disabled? It seems unlikely. I think the IRS had in mind that, you know, accountants and tax lawyers aren't qualified to determine how sick someone is, whether their condition rises. Why do you keep going back to that? I mean, that's not who's determining it. They're getting evidence from medical professionals. They're submitting it to a judge and a judge is deciding based upon its review of that medical testimony. I guess the rule that I'm asking this court to hold is that compliance with the rev rock is a matter of law. We know what you're asking for, but you haven't given us any specific language in either the statute or the procedure that supports that rule. And it seems to fly at odds with policy that IRS would make. No, Your Honor, there's a statement of purpose in the revenue procedure. And it is the purpose of the revenue procedure to establish a procedure and a rule for determining when someone is medically disabled. And I think once the taxpayer has complied with the revenue procedure, as a matter of law, that should be it. They should have then established medical disability. Any other questions, Your Honors? No. Okay. I'll hold my time. Thank you. Counselor Briggs, is that correct? Yes. Good morning, Your Honors. I'm Melissa Briggs. I represent the United States in this appeal with me at counsel table is Mr. Carl Wasserman, who was the attorney who tried the case. As you noted, the estate argued in its brief that submission of documents that complied with the revenue procedure created irrebuttable proof of financial disability and irrevocably told the statutory limits in those periods. But here's something about the letter, the document that was submitted by the doctor or that they submitted that raised a suspicion of the IRS. I mean, why did you doubt that? So there's information in the record that provides that fraud on its face, evidence that you were alluding to in your earlier questions. So the revenue procedure requires two things to request a suspension of the tolling period. One is a letter from a doctor establishing certain elements. And the second is a statement that no one can act on a taxpayer's behalf during those tax years. It questions like there's a power of attorney or a guardianship or something in effect. Here, the IRS record showed, and you can look at them in the joint appendix, the 4340s, which are evidence of that at JA 551 and the estate stipulated a trial. There were payments made by Mr. Rubenstein throughout the 2001 tax years. And in fact, until 2004, he requested an extension to file his 2002 tax return until August of 2002. Either Mr. Rubenstein or someone was acting on his behalf. So even if the standard is now he's articulating something less than irrebuttable, some evidence to the contrary, here, the IRS had that. Does that answer your question, Your Honor? So I'd like to answer what other questions the panel has for the government today. We don't have any questions. Thank you. Thank you. We'd ask you that you affirm the decision of the Court of Federal Claims. Thank you. Just to respond to the issue about the payments, Mr. Rubenstein made those tax payments himself. There was no one else acting on his behalf. If he made the tax payments himself, then how can you say he's disabled? I think you're getting... Not able to handle financial... I think you're getting into the very point, I think, that the Rev Proc is designed to avoid. Just how sick was he? There was evidence at trial that he lived alone. He was able to shop. You're alleging that he was so sick that he's... In order to meet the exemption, he was so sick that he could not take care of his own financial matters. But here he is, signing his tax forms and sending them in on the face. Now you get a document from the doctor that says he's got Alzheimer's disease and he's unable to handle any of the finances during this period of time. But yet, they got tax forms to show that he is filing taxes. So they say it's either him or somebody on his behalf. And if it's somebody on his behalf, then they don't meet the exception. Well, Your Honor, he had dementia. Whether it was Alzheimer's or some other form of dementia, that was an issue at trial. But he was definitely demented. And I think one of the payments in the record, it looks like he made the same payment twice because he was confused. But I was just... The court below looked at all the evidence, which included statements made by the very same doctor saying something that sounds quite the opposite of what he said to the IRS. And so the court looked at all that evidence and came to a conclusion, including what you're talking about, the existence of the overpayment, the fact that the taxpayers, that he was signing his own return forms, all of that was considered in Wade. And the conclusion was drawn on credibility. And that's virtually unreviewable. It sounds like now you're trying to get us to look into the record and you're relying on the record to try to show that he was, in fact, demented in your words. You know, I think you're moving your hands to show your weighing of evidence. And I think that's exactly what the Rep Proc was designed to avoid. And yes, the lower court did do that. The questions of, well, was he able to pay his bills on time? The lower court is entitled to weigh evidence. But then again, we're not. And Your Honor, I'm suggesting that the lower court should have asked, was the Rep Proc complied with? So your view is, if you make this submission and comply with all the requirements in that list, even if the IRS has documented evidence that flatly contradicts the doctor's affidavit, they have to nonetheless blindly accept it. Your question presumes that the medical statement was false. I mean, where a doctor falsely certifies that someone is disabled. And I guess in that case— That's this case. No, no. Whether and how much— The court of federal claims found that the doctor's certification was not credible. I don't think the judge found that the certification was incredible. She found that the doctor himself made— It wasn't just the doctor himself had some credibility. He either lied to the DMV or he lied to the IRS. They're two flatly contradictory statements. Well, no. At trial, he explained that his DMV statement had notes— Which he completely rejected his explanation of that. That is true, Your Honor. That is true, Your Honor. Again, absent fraud, I think that the rule that we would like this court to find is that compliance with the RevPROC affirmatively establishes disability. There's plenty of case law where failure to comply with the RevPROC meant that the taxpayer wasn't disabled. We think that strict compliance with the RevPROC should equal a finding of disability. Okay. I think we understand your argument. Thank you, Your Honor. Thank you. Our next case is